

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____

**United States Bankruptcy Judge**

**Signed January 13, 2011**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 13 |
| TRUMAN NGUYEN, | § | |
| | § | CASE NO. 10-42499-DML13 |
| | § | |
| DEBTOR. | § | |
| | § | |

### MEMORANDUM OPINION AND ORDER

Before the court are the *Motion for Relief from Automatic Stay of Act against Property* (the "Motion"), docket no. 31, filed by Wells Fargo Bank, N.A. (the "Servicing Agent"), as servicing agent for US Bank National Association, as Trustee for the Structured Asset Investment Loan Trust, 2005-7 ("US Bank," and, collectively with the Servicing Agent, "Wells Fargo"), and the *Response to Motion for Relief from Automatic Stay filed by Wells Fargo Bank N.A.* (the "Response," and, collectively with the Motion,

the "Pleadings"), docket no. 33, filed by Truman Nguyen ("Debtor"). The court held a hearing on the Pleadings on October 6, 2010, after which the court took the matter under advisement. Wells Fargo filed its *Brief in Support of Motion for Relief from Automatic Stay of Act against Property* (the "Wells Fargo Brief"), docket no. 45, on October 26, 2010. Debtor subsequently filed his *Brief in Support of Denial of Relief from Automatic Stay* (the "Nguyen Brief"), docket no. 46, on November 8, 2010.

The Pleadings are subject to the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(G). This memorandum opinion and order constitutes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 9014 and 7052.

## I.  BACKGROUND

The relevant facts in the record are set forth as follows. On May 11, 2005, Debtor executed an Adjustable Rate Note (the "Note") in the amount of $113,600.00 in favor of BNC Mortgage, Inc. (the "Original Mortgagee"). A deed of trust (the "Deed of Trust") executed by Debtor and Linda Le Nguyen ("Co-Owner") secured the Note. On May 18, 2005, the Deed of Trust was filed in the Tarrant County, Texas, real property records. The Deed of Trust created a lien in favor of the Original Mortgagee against real property located at 2123 Merritt Way, Arlington, Texas 76018 (the "Property"). Wells Fargo thereafter obtained the Original Mortgagee's interest in the Note and the Deed of Trust.[1]

Debtor and Co-Owner subsequently defaulted on the Note. Wells Fargo exercised the Deed of Trust's power of sale provisions and posted the Property for sale at a

---

[1]  In the Wells Fargo Brief, Wells Fargo "collectively" defines Wells Fargo as "Wells Fargo Bank, N. A., as servicing agent for US Bank National Association, as Trustee for the Structured Asset Investment Loan Trust, 2005-7" as "Wells." Wells Fargo Brief at 1. As discussed below, apparently including the Servicing Agent and US Bank within the same defined term has prevented the court from being able to determine which entity—the Servicing Agent or US Bank—performed particular actions. The court also cannot tell what authority the Servicing Agent has as US Bank's agent.

foreclosure auction (the "Auction") to be held on April 6, 2010, in Tarrant County, Texas. The Auction proceeded on that date. Wells Fargo was the sole bidder at the Auction and purchased the Property for $117,300.00.

Substitute trustee Janae Urbanczyk ("Urbanczyk") then prepared a substitute trustee's deed (the "Trustee Deed") conveying the Property to US Bank, *see* docket no. 31-1. The Trustee Deed lists the "Deed Date" as April 6, 2010, but Urbanczyk apparently executed the Trustee Deed and had it notarized sometime on April 7, 2010. Also on April 7, at 9:28 P.M., Debtor filed his petition in the above-captioned bankruptcy case (the "Petition"). In the Wells Fargo Brief, Wells Fargo asserts that Urbanczyk delivered the Trustee Deed to Wells Fargo on April 7, but the record contains no evidence indicating at what time delivery occurred, or whether delivery occurred at all on that date. Nor does the Wells Fargo Brief make clear whether delivery, assuming it occurred, was made to the Servicing Agent, US Bank, or both. The Trustee Deed was recorded in the real property records of Tarrant County, Texas, on April 21, 2010.

Debtor listed the Property in his Schedule A—Real Property, docket no. 13, stating that the "current value of debtor's interest in [the Property], without deducting any secured claim or exemption" is $155,000.00. Debtor also listed the Property in his Schedule C—Property Claimed as Exempt, docket no. 13, stating the "value of [the] claimed exemption" as $13,875.00. Debtor included the Property in his Schedule D—Creditors Holding Secured Claims, docket no. 13, listing two secured claims against the Property held by Americas Servicing Company, one for $113,600.00 on account of a "conventional real estate mortgage," and one for $7,500.00 for "mortgage arrears."

On July 15, 2010, Wells Fargo filed the Motion asking the court to terminate the automatic stay with respect to the Property. Debtor filed the Response opposing Wells Fargo's request on July 21, 2010. The court took the Pleadings under advisement following the October 6, 2010 hearing.

## II. DISCUSSION

The essential issue before the court is whether Debtor held a legal or equitable interest in the Property when Debtor filed the Petition. Under section 541(a)(1) of the Bankruptcy Code, "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the bankruptcy estate. 11 U.S.C. § 541(a)(1). A voluntary bankruptcy case is commenced under Title 11 by filing the bankruptcy petition. *See* 11 U.S.C. § 301(a). Any legal or equitable interest held by Debtor in the Property therefore became property of the estate at the moment he filed the Petition.

Section 362(a) provides that the automatic stay taking effect upon the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of— . . . (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; [and] (4) any act to create, perfect, or enforce any lien against property of the estate . . . ." Therefore, if Debtor held a legal or equitable interest in the Property when he filed the Petition, the automatic stay imposed by section 362 prohibited Wells Fargo from taking action against the Property and prevented any legal or equitable interest in the estate from transferring to US Bank. If, however, Debtor held no legal or equitable interest in the Property when the Petition was filed, then there was

no interest in the Property which could have become property of the estate. In such case, the automatic stay is not applicable and the court must grant the Motion.[2]

In the Wells Fargo Brief, Wells Fargo argues that its successful bid at the Auction on April 6, and Urbanczyk's execution and (alleged) delivery of the Trustee Deed on April 7, ensured Debtor had been divested of both legal and equitable title to the Property prior to the filing of the Petition. Therefore, Wells Fargo argues, no legal or equitable interest in the Property could have become property of the estate, and the court must grant the Motion. As discussed below, the court concludes that US Bank, and not Debtor, held equitable title to the Property when Debtor filed the Petition. The court also concludes, however, that the record does not contain sufficient facts for the court to determine at this time whether Debtor held legal title to the Property at the time Debtor filed the Petition. The parties are therefore instructed to contact the court to set this issue for evidentiary hearing.

The Nguyen Brief does not directly address Wells Fargo's argument. Debtor instead argues that this case is similar to *Hamilton v. Realty Portfolio, Inc. (Matter of Hamilton)*, 125 F.3d 292 (5th Cir. 1997), a case holding that a chapter 13 debtor has standing under section 522(h) to use the trustee's "strong-arm power" under section 544(a)(3) to avoid certain incomplete prepetition transfers of exempt property which a bona fide purchaser could avoid. Debtor reasons that if he has standing to avoid a prepetition transfer of the Property to US Bank, he must have an equitable interest in the Property, "and therefore the automatic stay should remain in place . . . to enable [Debtor]

---

[2]     Technically, if Debtor held no interest in the Property when he filed the Petition, then the automatic stay never protected the Property in the first place. "[O]ut of an abundance of caution," however, Wells Fargo requests in the Motion that the court "enter an order terminating any stay of action . . . that may exist as to [the Property]." Motion at 2.

to file an adversary action for avoidance of the transaction." Nguyen Brief at 3. For reasons set forth below, the court concludes Debtor did not hold an equitable interest in the Property at the time he filed the Petition. Because the court cannot determine from the record whether Debtor held legal title to the Property at that time, the court also declines to decide at this time whether, assuming US Bank acquired both legal and equitable title to the Property prior to the filing of the Petition, Debtor may rely on *Hamilton* to avoid the transfer of the Property to US Bank.

1.  **Did Debtor hold legal or equitable title to the Property when Debtor filed the Petition?**

Under Texas law, the execution of a deed of trust severs the legal and equitable estates. *See Flag-Redfern Oil Co. v. Humble Exploration Co., Inc.*, 744 S.W.2d 6, 8 (Tex. 1987). Legal title remains with the mortgagor while equitable title transfers to the mortgagee. *See id.* Because legal title and equitable title are separate interests under Texas law, the court will consider each in turn.

a.  **Equitable title**

Upon execution of the Deed of Trust in May 2005, equitable title to the Property passed from Debtor and Co-Owner to the Original Mortgagee. *See id.* US Bank thereafter acquired equitable title when it received the Original Mortgagee's interest in the Note and the Deed of Trust. US Bank therefore held equitable title on the date of the Auction.

The court can find only one Texas case addressing when, precisely, equitable title transfers from mortgagee to purchaser as a result of a foreclosure sale. *See Peterson v. Black*, 980 S.W.2d 818 (Tex. App.—San Antonio 1998, no pet.). *Peterson* involved a lawsuit filed by mortgagor C.D. Peterson ("Peterson") against substitute trustee Robert E.

Black ("Black"), in which Peterson alleged Black breached his substitute trustee duties by preventing prospective purchasers from bidding at the foreclosure sale. *Id.* at 820. Black argued that title was restored to Peterson when the purchaser "set aside" the foreclosure sale, thereby fully compensating Peterson for any damages he sustained as a result of Black's actions. *Id.* at 821-22. According to Black, the purchaser had a right to do so up to the time at which the trustee's deed was recorded, since, Black reasoned, the sale was not complete until recording occurred. *Id.* at 822.

To evaluate Black's argument, the *Peterson* court had to determine whether failing to record a trustee's deed precludes the completion of a foreclosure sale. The court decided that it does not, noting that, according to decades-old Texas case law,[3] "the failure to record a written deed does not divest the purchaser of title," and "[a] sale in accordance with the law and the provisions of a deed of trust transfers equitable title to the purchaser in the absence of a deed." *Id.* at 822. The *Peterson* court then concluded that "the sale was complete when the foreclosure was conducted in accordance with the law and the provisions of the deeds of trust and Black accepted [the purchaser's] bid."[4]

---

[3]    *See Pioneer Building & Loan Ass'n v. Cowan*, 123 S.W.2d 726, 730 (Tex. Civ. App.—Waco 1938, writ dism'd judgm't cor.); *Simonds v. Stanolind Oil & Gas Co.*, 114 S.W.2d 226, 235 (1938); *Clarkson v. Ruiz*, 140 S.W.2d 206, 208 (Tex. Civ. App.—San Antonio 1940, writ dism'd judgm't cor.).

[4]    The court admits to being perplexed by the reasoning underlying the *Peterson* court's conclusion. As discussed more fully below, Texas law generally requires that an interest in real property be transferred by written instrument. *See* TEX. PROP. CODE 5.021 (Vernon 2003) (enacted Acts 1983, 68th Leg., effective Jan. 1, 1984); *Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257, 261 (Tex. 1974). The statement in *Peterson* that "[a] sale in accordance with the law and the provisions of a deed of trust transfers *equitable title* to the purchaser *in the absence of a deed*," *see Peterson*, 980 S.W.2d at 822 (emphasis added), appears at first glance to make no sense in light of Texas law as it stood when the *Peterson* court issued its opinion. Texas courts have held, however, that equitable title may sometimes pass, not by the execution and delivery of a written instrument, but by operation of law to a buyer of real property upon performance of an executory contract. *See Goana v. Gonzales*, 997 S.W.2d 784, 786-87 (Tex. App.—Austin 1999, no pet.) (determining that an oral executory contract, which was later formalized in a writing, gave the buyer the equitable right to make payments on the property, completion of which would cause equitable title to vest in the buyer by operation of law and give the buyer the right to receive a

The court concludes that, in accordance with *Peterson*, equitable title to the Property transferred to US Bank in its capacity as purchaser when the Auction was complete—i.e., when Urbanczyk, as substitute trustee, accepted Wells Fargo's bid, provided the Auction was conducted in accordance with Texas law and the Deed of Trust's provisions. The court has reviewed the Deed of Trust and can find nothing to suggest, based on the record, that the Auction was not conducted in accordance with the Deed of Trust's provisions. Nor has either party asserted that the Auction did not comply with both Texas law and the Deed of Trust. The court therefore concludes that US Bank acquired equitable title to the Property in its capacity as purchaser when Urbanczyk accepted Wells Fargo's bid on April 6, 2010, the date of the Auction. US Bank thus held equitable title to the Property when Debtor filed the Petition on April 7, 2010, and equitable title to the Property could not have become part of Debtor's bankruptcy estate under section 541(a)(1).

The same result would obtain, however, even if the Auction did not comply with Texas law or the Deed of Trust's provisions. Failure to do so would, according to *Peterson*, prevent equitable title from transferring from US Bank as mortgagee to US Bank in its capacity as purchaser. Because the execution of a deed of trust severs equitable title from legal title, *see Flag-Redfern Oil Co.*, 744 S.W.2d at 8, Debtor last held equitable title to the Property in May 2005. Had the Auction not been conducted in accordance with Texas law or the Deed of Trust's provisions (or, had the Auction never

---

deed and legal title). It is not clear whether the *Peterson* court felt this executory contract analogy should apply in the foreclosure sale context, or whether the court's conclusion—that a properly conducted foreclosure sale transfers equitable title to the purchaser in the absence of a written instrument—was the product of carelessly crafted language. The court, however, should apply the law of a state as that state's courts have interpreted it. Accordingly, the court will apply *Peterson* to the facts of this case.

occurred at all), equitable title would have remained with the party holding the Original Mortgagee's interest in the Note and the Deed of Trust—i.e., US Bank.  The end result is that US Bank, and not Debtor, held equitable title to the Property when Debtor filed the Petition, regardless of whether equitable title transferred from mortgagee to purchaser as a result of the Auction.   Under no circumstances, then, could equitable title to the Property have become property of Debtor's bankruptcy estate under section 541(a)(1).

### b.  Legal title

As stated above, upon executing a deed of trust, the mortgagor retains legal title to the property, while the mortgagee acquires equitable title.  *See id.*  Debtor (along with Co-Owner) thus retained legal title to the Property after executing the Deed of Trust in May 2005.  The court therefore must determine whether legal title passed to US Bank prior to Debtor filing the Petition, or whether it remained with Debtor, thereby resulting in legal title to the Property becoming property of the bankruptcy estate under section 541(a)(1).[5]

Generally, to transfer an interest in real property under Texas law, the conveyance must be "in writing and must be subscribed and delivered by the conveyor or by the conveyor's agent authorized in writing."  TEX. PROP. CODE § 5.021 (Vernon 2003); *see also Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 869 (Tex. App.—Dallas 2005, no pet.).  "[T]itle to transferred property will vest upon execution and delivery of the deed."  *Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257, 261 (Tex. 1974); *see also Adams*, 154 S.W.3d at 869.  To prove delivery of a deed, the deed must be

---

[5]     For a thorough analysis of whether legal title transferred to a purchaser as a result of a foreclosure sale conducted one day prior to the property owner filing for bankruptcy, see *Gomez v. Kamper Invs., LLC (In re Gomez)*, 388 B.R. 279 (Bankr. S.D. Tex. 2008), a case factually distinguishable from the case at bar.

delivered into the control of the grantee and the grantor must have intended the deed to become operative as a conveyance. *See Adams*, 154 S.W.3d at 869 (citing *Binford v. Snyder*, 189 S.W.2d 471, 475 (Tex. 1945)).

Therefore, for legal title to the Property to have transferred to US Bank, Urbanczyk must have executed and delivered the Trustee Deed to US Bank prior to Debtor filing the Petition. Whether Urbanczyk did so is not apparent from the record. Though the "Deed Date" listed on the Trustee Deed is April 6, 2010, the date of the Auction, the Trustee Deed was apparently executed by Urbanczyk and notarized on April 7. The record does not reflect whether Urbanczyk executed the Trustee Deed prior to 9:28 P.M., when Debtor filed the Petition. And while Urbanczyk no doubt intended the Trustee Deed to convey legal title to the Property to US Bank, given that "US Bank National Association, as Trustee for the Structured Asset Investment Loan Trust, 2005-7" is listed as the grantee, the record does not reflect if Urbanczyk delivered the Trustee Deed into the control of either the Servicing Agent or US Bank at all on April 7, let alone before 9:28 P.M.

Even if the record did contain evidence indicating delivery to the Servicing Agent occurred before 9:28 P.M., the court would be unable to determine whether delivery to US Bank occurred *in a legal sense*. As stated above, it is not clear what services the Servicing Agent provided US Bank, or what powers it exercised on US Bank's behalf. Notably, the court cannot tell whether the Servicing Agent acted as US Bank's legal agent. Therefore, even if the record did indicate delivery to the Servicing Agent occurred before 9:28 P.M., the court would require further evidentiary hearing to determine what

effect this delivery had on legal title to the Property.[6]   At present, the court cannot determine whether US Bank acquired legal title to the Property prior to Debtor filing the Petition, and thus cannot conclude whether legal title to the Property became property of Debtor's bankruptcy estate pursuant to section 541(a)(1).   The parties are therefore instructed to contact the court to set this matter for a further evidentiary hearing.

**2.   Did Debtor hold an "equitable interest" in the Property, pursuant to *Hamilton v. Realty Portfolio, Inc.*, when he filed the Petition?**

In the Nguyen Brief, Debtor argues that this case is similar to *Hamilton v. Realty Portfolio, Inc. (Matter of Hamilton)*, 125 F.3d 292 (5th Cir. 1997).   In *Hamilton*, the Court of Appeals for the Fifth Circuit determined that a chapter 13 debtor has standing under section 522(h)[7] to use a trustee's section 544(a)(3) "strong-arm power" to avoid an incomplete prepetition involuntary transfer of exempt property when the trustee declines to do so. *Id.* at 298.   Section 544(a)(3) lets a trustee avoid an incomplete transfer of real property which a bona fide purchaser of the property could avoid.   In the Nguyen Brief, Debtor asserts that he has standing to avoid any transfer of the Property to US Bank which may have occurred, and as a result, must have an "equitable interest" in the Property.   Nguyen Brief at 3.   "[T]herefore the automatic stay should remain in place at

---

[6]   Not only does the court lack any evidence respecting the Servicing Agent's authority, it is certainly possible that any authority it had would not extend to accepting delivery of the Trustee Deed on behalf of US Bank in US Bank's capacity as a purchaser.   Certainly the Servicing Agent could not have accepted delivery for a third party purchaser, and the court is quite unwilling to assume that receipt of the Trustee Deed by the Servicing Agent satisfied the delivery requirement for passage of legal title to US Bank.

[7]   Section 522(h) provides: "The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if –

(1)   such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of [Title 11] or recoverable by the trustee under section 553 of [Title 11]; and

(2) the trustee does not attempt to avoid such transfer."

this time to enable [Debtor] to file an adversary action for avoidance of [any transfer of the Property to US Bank]." *Id.*

The Nguyen Brief does not explain why having standing under section 522(h) to avoid a transfer of the Property to US Bank—assuming hypothetically that such a transfer occurred and that Debtor has such standing—leads inexorably to the conclusion that Debtor holds an "equitable interest" in the Property. Certainly this "equitable interest" allegedly held by Debtor cannot refer to equitable title to the Property, given that Debtor last held equitable title in May 2005. Admittedly, there is authority in Texas for the proposition that "[a]n entity holds equitable title when it possesses the present right to compel legal title." *See Harris County Appraisal Dist. v. Primrose Houston 7 Housing, L.P.*, 238 S.W.3d 782, 787 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *see also TRQ Captain's Landing L.P. v. Galveston Central Appraisal Dist.*, 212 S.W.3d 726, 732 (Tex. App.—Houston [1st Dist.] 2006, pet. granted). Even assuming the right to avoid a transfer of property using section 544(a)(3) could be considered the right to compel legal title, and therefore an "equitable interest," however, Debtor only acquired this "equitable interest" *after* the commencement of the case, as a result of powers provided to the trustee by section 544. Section 541(a)(1) provides that all legal or equitable interests in property owned by the debtor at the time the case is commenced become property of the estate—i.e., those legal or equitable interests held by the debtor *at the moment he files the petition*. *See* 11 U.S.C. § 541(a)(1). Section 544 in turn provides that "[t]he trustee shall have, *as of the commencement of the case . . .*," the powers set forth in section 544(a)(3). *See* 11 U.S.C. § 544(a)(3) (emphasis added). In other words, the trustee's power to avoid a transfer of exempt property—and by extension, Debtor's power to do so as well—

*arises after the petition is filed.*  Thus, even if a debtor's ability to avoid a transfer of exempt property pursuant to section 544(a)(3) could constitute an "equitable interest"—a proposition which the Fifth Circuit in no way considered in *Hamilton*—such "equitable interest" would come into existence *after* the petition was filed.  Debtor therefore cannot rely on *Hamilton* for the proposition that he possessed an equitable interest in the Property *at the time he filed the Petition*.

The court also notes the symmetry between the facts of this case and those of *Hamilton*.  It is possible that, should an evidentiary hearing show Debtor did not hold legal title to the Property when he filed the Petition, Debtor could rely on *Hamilton* to avoid the transfer of legal title to US Bank via an adversary proceeding.  Because the court cannot determine from the record, however, whether Debtor held legal title to the Property when he filed the Petition, the court cannot tell whether an involuntary transfer of exempt property to US Bank occurred at all.  If no involuntary transfer occurred, *Hamilton* has no applicability to this case.  The court therefore declines to decide for the time being whether *Hamilton*'s holding governs the case at bar.

## III.   CONCLUSION

For the foregoing reasons, the court concludes that Debtor did not hold equitable title to the Property, or an equitable interest in the Property, when he filed the Petition. The record does not contain sufficient facts for the court to determine whether Debtor held legal title to the Property at that time.  The parties are therefore instructed to contact the court to set this matter for evidentiary hearing.  Because an evidentiary hearing is required to determine whether legal title to the Property passed to US Bank prior to

Debtor filing the Petition, the court declines to decide at present whether *Hamilton v. Realty Portfolio, Inc.* is applicable to the case at bar.

IT IS SO ORDERED.

# # # END OF MEMORANDUM OPINION # # #